**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: August 31 2018

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 18-31582 |
| | ) | |
| Buckeye Activewear, LLC, | ) | Chapter 7, Involuntary |
| | ) | |
| | ) | |
| Alleged Debtor. | ) | Judge John. P. Gustafson |

### MEMORANDUM OF DECISION AND ORDER RE: INVOLUNTARY PETITION

This case came before the court for hearing on June 26, 2018 pursuant to Alleged Debtor Buckeye Activewear, LLC's ("Alleged Debtor") Motion to Dismiss Case ("Motion"). [Doc. #8]. Petitioning Creditor Radia Enterprises, Inc. ("Petitioning Creditor") filed a Response to Alleged Debtor's Motion [Doc. #13], Alleged Debtor filed a Reply to Opposition to Motion to Dismiss [Doc. #19], and Petitioning Creditor filed its own Reply to Creditor's Surreply on Motion for Dismissal. [Doc. #21]. In its Motion, Alleged Debtor argues that, because there is no legal basis for Petitioning Creditor's filing of the involuntary petition, the involuntary petition should be dismissed with prejudice.

This is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (O) and venue is proper under 28 U.S.C. §1409(a). The court has jurisdiction over core proceedings under 28 U.S.C. §§1334 and 157(a) and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio.

Because the court finds that Petitioning Creditor cannot sustain its burden in terms of establishing that Alleged Debtor owes it an undisputed debt sufficient for the filing of an involuntary bankruptcy petition, the court will grant Alleged Debtor's Motion and dismiss this case with prejudice.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 17, 2018, Petitioning Creditor filed a Chapter 7 involuntary petition against Alleged Debtor, averring that Alleged Debtor was not paying its non-contingent, undisputed debts as they came due. [Doc. #1]. The involuntary petition lists only one creditor, Radia Enterprises, Inc. (Petitioning Creditor), and a single claim in the amount of $85,372.77, described as "unpaid invoices for goods sold on credit." [*Id.*, p. 3]. Alleged Debtor filed both a Reply to the Involuntary Bankruptcy [Doc. #7] and a Motion to Dismiss Case [Doc. #8] on June 5, 2018, arguing that the involuntary petition is baseless and involves debts owed by third-party entities, not Alleged Debtor or its affiliates. The court set both the Reply and Motion for hearing to be held on June 26, 2018. [Doc. #10].

With its Motion to Dismiss, Alleged Debtor filed the affidavit of Anthony S. Collins ("Mr. Collins"), the owner/operator of Alleged Debtor, in which Mr. Collins averred that while Alleged Debtor has previously done business with an entity affiliated with Petitioning Creditor, Alleged Debtor does not owe Petitioning Creditor any outstanding amounts. [*Id.*, pp. 3-4]. Mr. Collins' affidavit further states that Petitioning Creditor's involuntary suit appears to be an attempt at involving third parties in its dispute with Theodore R. Ralston ("Mr. Ralston"), a man Mr. Collins identified as unaffiliated with Alleged Debtor and Mr. Collins' related businesses. [*Id.*].

In its Response to Motion for Dismissal [Doc. #13], filed on June 21, 2018, Petitioning Creditor argues that there is no genuine dispute regarding the factual basis for its claim of a debt owed it by Alleged Debtor. In support, Petitioning Creditor submitted the affidavit of Rupendra Radia ("Mr. Radia"), the president of Petitioning Creditor, in which Mr. Radia states that Petitioning Creditor's business relationship with Alleged Debtor started when Petitioning Creditor hired Mr. Ralston as its business development director. [Doc. #14, p. 2]. Mr. Radia's affidavit explains that Mr. Ralston connected Petitioning Creditor with Alleged Debtor and then placed orders with Petitioning Creditor on Alleged Debtor's behalf. [*Id.*]. Mr. Radia's affidavit goes on to explain that the debt underlying Petitioning Creditor's involuntary filing stems from delivery of twelve orders of consumer goods that Petitioning Creditor avers Alleged Debtor is liable for. [*Id.*,

18-31582-jpg    Doc 22    FILED 08/31/18    ENTERED 08/31/18 13:17:26    Page 2 of 9

pp. 3-8].

Petitioning Creditor also submitted copies of invoices, email chains, and shipping documents that purport to outline the transactional dispute underlying Petitioning Creditor's claim. [Doc. #14-1 through 14-12]. Many of the submitted documents refer to Ted (Mr. Ralston), World Source Simple, LLC, and a delivery location at 2200 Allentown Road, Lima, Ohio.[1] [*Id.*] Additionally, Petitioning Creditor submitted a sworn affidavit of Cathy Meilchen ("Ms. Meilchen"), Petitioning Creditor's accountant, alongside exhibits that appear to outline Ms. Meilchen's attempts at collecting monies from Alleged Debtor for the goods at issue. [Doc. #15].

At the June 26th hearing, Alleged Debtor's counsel and Petitioning Creditor's counsel appeared by phone. Upon being questioned by the court, Alleged Debtor's counsel admitted that it has fewer than twelve creditors. The parties also argued in support of their respective positions and the court allowed the parties to submit additional briefing and evidence regarding Alleged Debtor's Motion to Dismiss. The court also set a trial for determining whether Alleged Debtor pays its debts as they come due that was to be held on September 13, 2018.[2] [Doc. #18].

On June 29, 2018, Alleged Debtor filed its Reply to Opposition to Motion to Dismiss [Doc. #19], arguing that the evidence before the court demonstrates that Petitioning Creditor's claim remains subject to genuine issues of fact, requiring dismissal of the involuntary petition. In support, Alleged Debtor submitted exhibits that outline a Texas state court lawsuit in which Petitioning Creditor appears to be suing third party entities for the same $85,372.77 underlying its involuntary petition brought against Alleged Debtor. [Doc. #19, pp. 14-45]. Alleged Debtor also submitted a second, more extensive affidavit from Mr. Collins and an affidavit from Mr. Ralston, both of which reference the Texas state court action and maintain that Mr. Ralston is not affiliated with Alleged Debtor. [*Id.*, pp. 7, 10]. Both affidavits also identify 2200 Allentown Road, Lima, Ohio as the address of a multi-tenant warehouse owned by another of Mr. Collins' companies, 2200 Allentown Road LLC, a warehouse that is currently occupied by a number of tenants, including Mr. Ralston and his business, World Source Simple, LLC. [*Id.*, pp. 6, 10].

In its Reply to Creditor's Surreply on Motion for Dismissal [Doc. #21], filed on July 24,

---

1/ Petitioning Creditor admits that at least ten of the twelve orders at issue were placed by Mr. Ralston. *See*, [Doc. #21, p. 4].

2/ The court notes that the issue before it in this decision is Alleged Debtor's Motion to Dismiss [Doc. #21], not whether Alleged Debtor is failing to pay its debts as they come due.

3

2018, Petitioning Creditor argues that it has presented sufficient evidence demonstrating that its claim against Alleged Debtor is not subject to a bona fide dispute. Petitioning Creditor explains that Ohio agency and acceptance/delivery law necessarily holds Alleged Debtor liable for the goods allegedly ordered on its behalf by Mr. Ralston. [*Id.*, pp. 4-7]. Petitioning Creditor further argues that Alleged Debtor's course of conduct and prior dealings with Petitioning Creditor establish a connection, under the Ohio law of apparent/ostensible authority, supporting Alleged Debtor's liability for the $85,372.77 owing from orders placed by Mr. Ralston. [*Id.*, pp. 6-7].

## LAW AND ANALYSIS

Section 303 of the Bankruptcy Code allows for the filing of an involuntary petition by holders of debt claims that are "not contingent as to liability or the subject of a bona fide dispute as to liability or amount.[3]" 11 U.S.C. §303(b); *see*, *In re Soderberg and Schafer CPAS, LLC*, 441 B.R. 262, 263 (Bankr. N.D. Ohio 2010). The burden of establishing the non-contingent and undisputed nature of a §303(b) qualifying claim rests on the petitioning creditor. *Soderberg*, 441 B.R. at 263 (citing *Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 944 (6th Cir. 2007)).

At issue in this case is whether Alleged Debtor owes Petitioning Creditor a debt that is not subject to a bona fide dispute. While the Bankruptcy Code does not define the term "bona fide dispute," the Sixth Circuit Court of Appeals has set forth the following objective standard for determining, for purposes of involuntary bankruptcy eligibility, whether a bona fide dispute exists: "If there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed.[4]" *DSC, Ltd.*, 486 F.3d at 945 (quoting *Booher Enter. v. Eastown Auto Co.* (*In re*

---

3/ For purposes of this decision, the court assumes that Petitioning Creditor's claim, if legally valid in full, meets the current statutory threshold amount of $15,775.00. *See*, 11 U.S.C. §303(b). Additionally, since Alleged Debtor admits that it has fewer than twelve creditors, the court finds that only one petitioning creditor is needed to satisfy the petitioning creditor requirement under §303(b)(2).

4/ Petitioning Creditor cites to a test utilized by the Third Circuit that looks to whether there are "substantial factual and legal questions raised by the debtor [that] preclude [a] finding of involuntary bankruptcy." *See*, *B.D.W. Assoc. v. Busy Beaver Bldg. Centers, Inc.*, 865 F.2d 65, 66-67 (3rd Cir. 1989)(citing *In re Busick*, 831 F.2d 745 (7th Cir. 1987)). However, other more recent court formulations of the bona fide dispute test, including the Sixth Circuit's binding decision in *DSC, Ltd.*, do not include the word "substantial", and this court will follow *DSC, Ltd.* and the case law decisions that it cites as persuasive authority. *See*, *e.g.*, *DSC, Ltd.*, 486 F.3d at 945; *Eastown*, 215 B.R. at 965, *Lough*, 57 B.R. at 997; *see also*, *Freedom Filler*, 2013 WL 3379365 at *1, 2013 Bankr. LEXIS 2760 at *2. Further, even if the court were to adopt Petitioning Creditor's proffered gloss on the bona fide dispute test, the court finds that Alleged Debtor has nevertheless introduced evidence sufficient to raise substantial factual and legal questions regarding Petitioning Creditor's claim.

4

*Eastown*), 215 B.R. 960, 965 (6th Cir. BAP 1998)); *see also*, *Soderberg*, 441 B.R. at 263-64; *In re Lough*, 57 B.R. 993, 997 (Bankr. E.D. Mich. 1986); *In re Freedom Filler, LLC*, 2013 WL 3379365 at *1, 2013 Bankr. LEXIS 2760 at *2 (Bankr. N.D. Ohio July 8, 2013). "[I]n determining whether a claim is subject to a bona fide dispute, the bankruptcy court must not resolve any genuine issues of fact or law, it must only determine whether such issues exist.[5]" *Soderberg*, 441 B.R. at 264 (citing *DSC, Ltd.*, 486 F.3d at 945).

In *Soderberg*, the bankruptcy court looked to a decision from the Fifth Circuit Court of Appeals and adopted the following burden-shifting framework:

> [T]he petitioning creditor must establish a prima facie case that no bona fide dispute exists. Once this is done, the burden shifts to the debtor to present evidence demonstrating that a bona fide dispute does exist. Because the standard is objective, neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden. The court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute. This does not mean that the bankruptcy court is totally prohibited from addressing the legal merits of the alleged dispute; indeed, the bankruptcy court may be required to conduct a limited analysis of the legal issues in order to ascertain whether an objective legal basis for the dispute exists.

*Soderberg*, 441 B.R. at 264 (quoting *Subway Equip. Leasing Corp. v. Sims* (*In re Sims*), 994 F.2d 210, 221 (5th Cir. 1993)); *see also*, *Rimell v. Mark Twain Bank* (*In re Rimell*), 946 F.2d 1363, 1365 (8th Cir. 1991); *Lough*, 57 B.R. at 997.

This court will follow *Soderberg* and adopt the *Sims* framework as well, noting, as the *Soderberg* court did, that the ultimate burden lies with Petitioning Creditor. 441 B.R. at 264 ("The burden shifted to the putative debtor is a burden of production only. The ultimate burden of persuasion rests on the petitioning creditor to establish his qualification under §303(b).")(citation omitted).

Upon review of the parties' submitted briefing, evidence, and arguments presented at the June 26th hearing, the court finds that both genuine issues of material fact and an unresolved legal

---

[5] Petitioning Creditor also cites to *In re Stroop*, 51 B.R. 210, 212 (D.Colo. 1985), a case in which a Colorado court adopted a summary judgment-like standard in determining whether a creditor's claim was subject to a bona fide dispute. Not only has the Sixth Circuit adopted a different test, *see*, *DSC, Ltd.*, 486 F.3d at 945, *Stroop* applied a summary judgment standard that predates the United States Supreme Court's decisions in *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S. Ct. 2502, 91 L.Ed.2d 202 (1986) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, the court declines to follow *Stroop*. *Cf.*, *Lough*, 57 B.R. at 997 (rejecting the summary judgment-like standard set forth in *Stroop*).

controversy regarding Alleged Debtor's potential liability exist in this case. Thus, the court finds that Petitioning Creditor's claim is subject to a bona fide dispute. Accordingly, based upon the Sixth Circuit's holding in *DSC, Ltd.*, the court will dismiss this case with prejudice.

In *DSC, Ltd.*, the underlying bankruptcy court decision held that the petitioning creditors' proffered bases for their debt claims - a settlement agreement and two pre-settlement agreements - were not sufficient to establish that they held claims not subject to a bona fide dispute. 486 F.3d at 948. In a published opinion, the Sixth Circuit Court of Appeals endorsed the *Eastown* bona fide dispute test and affirmed the bankruptcy court, holding that the bankruptcy court's decision to dismiss the involuntary petition against DSC, Ltd. was not clearly erroneous. *Id.*

In this case, the parties dispute the factual basis underlying Petitioning Creditor's assertion of a debt owed it by Alleged Debtor. In conflicting affidavits, both parties and their representatives present dramatically different accounts of what, in some ways, amounts to a fairly typical delivery and acceptance sales dispute. On one hand, Petitioning Creditor asserts that Alleged Debtor ordered and accepted shipments of consumer goods worth $85,372.77 that Alleged Debtor allegedly refused and refuses to pay for. [Doc. #13, p. 4]. Petitioning Creditor also asserts that Mr. Ralston is an agent of Alleged Debtor,[6] that Mr. Ralston was an actor involved in the disputed transactions [*Id.*; Doc. #21, pp. 6-8], and that the goods in question were delivered to Alleged Debtor's warehouse located at 2200 Allentown Road, Lima, Ohio. [Doc. #14, p. 2].

On the other hand, Alleged Debtor maintains that not only has it not received the goods in question, Mr. Ralston is not its agent and Alleged Debtor never placed the orders that serve as the basis for Petitioning Creditor's debt claim. [Doc. #8, p. 4]. Alleged Debtor's owner, Mr. Collins, further explains that another one of his companies, 2200 Allentown Road LLC, owns the multi-tenant warehouse that houses goods belonging to numerous entities [Doc. #19, p. 6], including Mr. Ralston's affiliated business, World Source Simple, LLC. [*Id.*, p. 10]. Alleged Debtor also submitted evidence of a Texas state court lawsuit in which Petitioning Creditor appears to be suing third parties, including Mr. Ralston and World Source Simple, LLC, for the same debt it claims is owed it by Alleged Debtor. [*Id.*, pp. 11, 14-45].

For purposes of this decision, the court will assume that Petitioning Creditor initially offered sufficient evidence in support of its petition to "establish a prima facie case that no bona

---

6/ In contrast to the allegation that Mr. Ralston is an agent of the Alleged Debtor, Petitioning Creditor's statement that it hired Mr. Ralston as its business development director has not been disputed. *See*, [Doc. #14, p. 2].

fide dispute exists." *Soderberg*, 441 B.R. at 264 (quoting *Sims*, 994 F.2d at 221). However, Alleged Debtor has also submitted a considerable amount of evidence that either directly contradicts or substantially complicates Petitioning Creditor's arguments. Therefore, while the court assumes that Petitioning Creditor has met its initial burden, the court finds that Alleged Debtor has met its burden in terms of "present[ing] evidence demonstrating that a bona fide dispute does exist." *Id.* (quotation omitted). Thus, the burden has shifted back, and Petitioning Creditor has not overcome the hurdle presented by Alleged Debtor's conflicting evidence. Accordingly, Petitioning Creditor has failed to satisfy the eligibility requirements of §303(b) as set forth in *DSC, Ltd.*.

At a minimum, the court finds that the record before it presents a number of genuine issues of fact[7] integral to the question of Alleged Debtor's liability, such as: were the goods in question actually ordered by Alleged Debtor, did Mr. Ralston order or accept the goods instead of Alleged Debtor, is the relationship between Alleged Debtor and Mr. Ralston sufficient to support a finding of "agency,[8]" and did some type of misdelivery occur at the multi-tenant warehouse where the goods were shipped? Even if the court were to fully credit the affidavit of Petitioning Creditor's president, and his version of the events that allegedly gave rise to Alleged Debtor's debt liability, Alleged Debtor has submitted enough conflicting evidence to render the debt at hand subject to a bona fide factual dispute, and thus insufficient to serve as a basis for the filing of an involuntary bankruptcy petition. *See*, *DSC, Ltd.*, 486 F.3d at 945; *Sims*, 994 F.2d at 221.

As for the presence of unresolved legal issues, Petitioning Creditor's briefing either omits or ignores the extent to which Alleged Debtor's liability is still subject to an ongoing, live controversy. For example, Alleged Debtor has submitted evidence indicating that Petitioning Creditor has also filed a Texas state court lawsuit against numerous other parties [Doc. #19, pp.

---

7/ In fact, the only exhibit offered by Petitioning Creditor that appears to include assent to contract by both Alleged Debtor and Mr. Ralston, Exhibit 2, itself contains an apparent conflict. While the purchase order states a date of May 24, 2018 [Doc. #14-3, p. 8], the email chain contains dates starting in November of 2017 [*Id.*, pp. 4-7], and the cashed check states a date of February 1, 2018. [*Id.*, p. 10].

8/ Petitioning Creditor repeatedly asserts that Mr. Ralston is an agent of Alleged Debtor. *See*, [Doc. #13, p. 14; Doc. #21, pp. 2-4]. However, both Alleged Debtor and Mr. Ralston himself insist that this is not the case and that Mr. Ralston is instead merely a tenant of Alleged Debtor's multi-tenant warehouse. *See*, [Doc. #8, p. 3; Doc. #19, pp. 3, 10-11]. Other than conclusory statements and legal arguments, Petitioning Creditor has offered nothing that substantively contradicts the sworn affidavits of Alleged Debtor and Mr. Ralston. Furthermore, the only party to admit to having an employer-employee relationship with Mr. Ralston is Petitioning Creditor. *See*, [Doc. #14, p. 2].

11, 14-45], including Mr. Ralston and World Source Simple, LLC, for the very debt it claims serves as a valid basis for its filing of an involuntary petition against Alleged Debtor. *Compare*, [Doc. #14-1, pp. 2-3] *with* [Doc. #19, p. 22]. The fact that Petitioning Creditor has named multiple parties in its Texas state court lawsuit, *see*, [Doc. #19, pp. 14-15, 31-32], some with only tenuous, unproven connections to Alleged Debtor at best, undercuts Petitioning Creditor's averment that there is no bona fide dispute that Alleged Debtor is liable for the $85,372.77 it asserts as the basis for the involuntary petition.[9]

Additionally, Petitioning Creditor repeatedly asks this court to come to legal conclusions that find in favor of its argument that Alleged Debtor owes it a sufficiently undisputed debt, but "the court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute." *Soderberg*, 441 B.R. at 264 (quoting *Sims*, 994 F.2d at 221); *see*, *DSC, Ltd.*, 486 F.3d at 945. Accordingly, Petitioning Creditor's apparent authority and delivery/acceptance arguments under Ohio law are not issues to be resolved at this stage of involuntary petition litigation.[10] *See*, *Soderberg*, 441 B.R. at 264; *DSC, Ltd.*, 486 F.3d at 945; *cf.*, *Orchard Group, Inc. v. Konica Medical Corp.*, 135 F.3d 421, 426 n.1 (6th Cir. 1998)("While apparent authority [under Ohio law] is a legal conclusion, its elements are chiefly factual matters that are for the jury.")(citations omitted).

In the context of a nascent involuntary bankruptcy case, it is not a Sixth Circuit bankruptcy court's task to adjudicate a live transactional dispute, particularly when that dispute is still amenable to colorable legal and factual arguments available to both parties. *See*, *DSC*, *Ltd.*, 486 F.3d at 945 ("Congress has made clear that it 'intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal.'")(quoting *Lough*, 57 B.R. at 997). Here, Alleged Debtor maintains that it is not liable for

---

9/ Petitioning Creditor's Texas state court lawsuit also may be an indication that it is using the involuntary bankruptcy process as a means of pursuing its collection rights as an individual creditor of Alleged Debtor. However, involuntary bankruptcy "exists as an avenue of relief for the benefit of the overall creditor body…. It was not intended to redress the special grievances, no matter how legitimate, of particular creditors…. Such creditors must seek redress under state law, in the state courts, and not in the bankruptcy court." *Wilk Auslander LLP v. Murray* (*In re Murray*), __F.3d__, 2018 WL 3848316 at *4, 2018 U.S. App. LEXIS 22471 at *11 (2nd Cir. August 14, 2018)(quotation omitted).

10/ Legal accuracy of Petitioning Creditor's "course of conduct" argument notwithstanding, Petitioning Creditor has not presented sufficient evidence for this court to make a finding as to whether Mr. Ralston legally placed orders on Alleged Debtor's behalf. In other words, the court's "limited analysis of the legal issues" appropriate at this stage of an involuntary bankruptcy case leads it to conclude that "an objective legal basis for the dispute exist[s]" in this case. *Soderberg*, 441 B.R. at 264 (quoting *Sims*, 994 F.2d at 221); *see also*, *Konica*, 135 F.3d at 426 n.1.

8

the $85,372.77 that underpins the involuntary petition because: 1) it never ordered the goods in question [Doc. #19, p. 2]; 2) it never received the goods in question [*Id.*]; and 3) other, third-party entities are instead liable for any debt that Petitioning Creditor seeks to collect on. [*Id.*, pp. 1, 3]. Given the still hotly disputed evidentiary record at hand, the court finds that each of these defenses appear to still be colorable, warranting dismissal of the involuntary petition because Alleged Debtor's liability remains a live, unsettled issue. *See*, *Soderberg*, 441 B.R. at 264 (quoting *Sims*, 994 F.2d at 221); *see also*, *Konica*, 135 F.3d at 426 n.1.

## CONCLUSION

To summarize, the court finds that the debt underlying Petitioning Creditor's involuntary petition is subject to a bona fide factual and legal dispute and thus will dismiss this case with prejudice. *See*, *DSC, Ltd.*, 486 F.3d at 945. Further, the parties have not consented to dismissal, and Alleged Debtor has not waived its right to judgment. *See*, 11 U.S.C. §303(i). Thus, the court will retain limited jurisdiction over this case and require that the parties file briefs on the issue of whether, pursuant to 11 U.S.C. §303(i), Petitioning Creditor should pay Alleged Debtor's costs and attorney's fees stemming from the filing of this involuntary case. *See*, *Nat'l Med. Imaging, LLC v. U.S. Bank, N.A.* (*In re Nat'l Med. Imaging*), 570 B.R. 147, 156 (Bankr. E.D. Pa. 2017)("…bankruptcy courts clearly retain jurisdiction to consider awarding a putative debtor section 303(i) damages after the court dismisses the involuntary petition.").

In light of the above findings, the court orders relief as follows:

**IT IS ORDERED** that the Alleged Debtor's Motion to Dismiss Case [Doc. #8] be, and hereby is, **GRANTED**. This case will be dismissed via the court's entry of a separate order of dismissal. The court retains jurisdiction over the case for the limited purpose of determining cost and fees due under 11 U.S.C. §303(i).

**IT IS FURTHER ORDERED** that the trial on whether Alleged Debtor pays its debts as they come due, set for September 13, 2018 at 10:00 am, be, and hereby is, **VACATED**.

**IT IS FURTHER ORDERED** that the parties are to submit briefing on the issue of whether Alleged Debtor is due costs and attorney's fees, pursuant to 11 U.S.C. §303(i), by 4:00 pm on September 28, 2018. The parties may also request a hearing. The issue of awarding costs and attorney's fees will be decisional thereafter.